IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ISMAEL VASQUEZ,

    Plaintiff,

v.                                                                                 CIV. NO. 12-558 GBW/ACT

THE GEO GROUP, INC.,
NEW MEXICO CORRECTIONS DEPT.,
DIEGO RIVERA, *in his individual capacity*,
STACY BEAIRD, *in his individual capacity*,
JAMES JANECKA, *in his individual capacity*,
VINCE HORTON, *in his individual capacity*,
and DOES 1-10,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants The GEO Group Inc., New Mexico Department of Corrections, Stacy Beaird, James Janecka, and Vince Horton's Motion for Summary Judgment. *Doc. 21*. Defendant Rivera has joined the other Defendants' Motion and Reply. *Docs. 24, 43*. After the parties concluded their initial briefing (*see docs. 35, 40*), the Court issued an order for supplemental briefing, *doc. 47*, to which the Defendants responded on November 12, 2012. *Doc. 48*. Defendant Rivera joined that response on the same day. *Doc. 49*. The Court held an evidentiary hearing on February 7, 2013. *Doc. 56*. Based on the briefing and evidence provided at the hearing, the Court finds Defendants' Motion to be well founded and GRANTS it.

**I.     BACKGROUND**

On September 30, 2011, Plaintiff, then an inmate at Lea County Correctional Facility ("LCCF"), was allegedly sexually assaulted by Defendant Rivera. *Doc. 1* ¶¶ 4, 20-22; *Doc. 21* at 3. Claiming damages from this assault, Plaintiff filed suit in this court on May 23, 2012. *Doc. 1*. Defendants argue that Plaintiff's suit must be dismissed for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995[1] (the "PLRA"). *Doc. 21*. Based on the briefing received, the Court determined that supplemental briefing and an evidentiary hearing were necessary. *Docs. 47, 54*. Supplemental briefing was complete on November 29, 2012. *Docs. 48, 51*. The Court conducted an evidentiary hearing on February 7, 2013. *Doc. 56*.

**II.    STANDARD OF REVIEW**

Ordinarily, when reviewing a motion for summary judgment motion, the Court is prohibited from weighing evidence or deciding issues of credibility. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In fact, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *Id*. at 253-55. However, a summary judgment motion based upon an inmate's failure to exhaust administrative remedies is a different matter. Instead, every circuit court to have addressed this issue has held that it is proper for the trial judge to decide the exhaustion matter including resolving any

---

[1] Title 42 U.S.C. § 1997e(a).

relevant factual disputes. *See Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011); *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003); *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008). To resolve any relevant factual disputes, the Court may hold an evidentiary hearing and make such findings as are appropriate. *See Messa*, 652 F.3d at 310; *Dillon*, 596 F.3d at 273; *Pavey*, 544 F.3d at 742. While the Tenth Circuit has not addressed this issue, at least one district court within the Circuit has agreed with the reasoning of these Circuits. See *Saleh v.Wiley*, Civ. No. 09-02563-PAB-KLM, 2012 WL 4356219, at *4 (D. Colo. Sept. 24, 2012). Moreover, in this case, Plaintiff's counsel explicitly agreed to the Court making factual determinations relevant to exhaustion. *HT* at 5:13-23.

### III.   FACTUAL FINDINGS

On the basis of the record including the evidentiary hearing, the Court makes the following findings:

1. The alleged sexual assault against Plaintiff occurred on September 30, 2011. *Doc. 1*.

2. The relevant policies regarding pursuing administrative remedies in the New Mexico Department of Corrections are reflected in Exhibits A and B. *Doc. 57*, Exs. A, B. These policies apply to allegations of sexual assaults by guards against inmates. *Id*.

3. Pursuant to those policies, the administrative remedy process consists of three steps: (1) an informal complaint, (2) a formal grievance, and (3) an appeal to the Office of the Secretary of Corrections. *Id*.

4. An informal complaint must be filed first and within five calendar days of the date of the incident. *Id*.

5. If the inmate is not satisfied by how the informal complaint is addressed, the inmate may file a formal grievance. *Id*. The formal grievance must be filed within 20 calendar days of the date of the incident. *Id*.

6. If the inmate is not satisfied by the decision on the formal grievance, the inmate may file an appeal. *Id*. The appeal must be filed within 7 calendar days of receiving the decision on the grievance. *Id*.

7. To exhaust the administrative remedy process of the New Mexico Department of Corrections, an inmate must complete all three steps. *Id*.

8. The Court assumes without finding that, immediately after the alleged assault, Defendant Rivera threatened to retaliate against Plaintiff if Plaintiff reported the incident. *HT* at 72:11-73:1.

9. Nonetheless, the same day as the alleged assault, Plaintiff reported the incident to Dr. Lose, who worked in the prison's mental health department. *Id*. at 72:1-74:6.

10. In response to learning about the alleged assault, Dr. Lose organized a meeting between Plaintiff, Defendant Warden Stacy Beaird and Captain Sandoval. *Id*. at 73:2-75:21. At this meeting, Plaintiff again described the alleged incident between himself and Defendant Rivera. *Id*. at 75:21.

11. Upon receiving this report, the warden told Plaintiff that "everything is going to be taken care of" and that Plaintiff "had nothing to worry about." *Id*. at 78:1-3; *see also id*. at 76:2-8.

12. Immediately after this meeting, Plaintiff was transferred to the medical separate segregation unit at LCCF and remained there until October 3, 2011. *Id*. at 76:23-77:10. While in medical segregation, Plaintiff was not in any contact with Defendant Rivera. *Id*. at 91:19-92:9. On the other hand, Plaintiff did have contact with Dr. Lowes while in medical segregation. *Id*. at 92:10-13.

13. While in medical segregation Plaintiff did not file any informal complaint or formal grievance. *Id*. at 77:20-78:5.

14. On October 3, 2011, Plaintiff was transferred to the disciplinary segregation unit of LCCF and on October 4, 2011, he was transferred to the Guadalupe County Correctional Facility ("GCCF"). *Id*. at 19:9-24.

15. While at GCCF, Plaintiff filed two informal complaints, on October 17, and 19 respectively. *Doc. 58*, Exs. H, I.

16. In the October 17th informal complaint, Plaintiff stated, "I am looking for any information so I can write to the state to explain my situation about what has tooken [sic] place at L.C.C.F. and to request to be moved out of this G-E-O facility to a state facility, Thank you [sic]. Who can I write too [sic], from the state in Santa Fe?" *Id*., Ex. H. On the form, Plaintiff indicated the "Date of Incident" was October 17, 2011. *Id*. He also described the "Name of subject or person to whom the complaint was filed against" was "Capten [sic] Aragon." *Id*. Captain Aragon is a captain at GCCF. At no relevant time did Captain Aragon work at LCCF where the alleged sexual assault occurred. *HT* at 25:3-8.

17. In the October 19th informal complaint, Plaintiff complained only about not being able to make phone calls out of GCCF. *Doc. 58*, Ex. I.

16. On October 25, 2011, Plaintiff was transferred to Western New Mexico Correctional Facility ("WNCMF"). *Doc. 21* at 4. He was transferred again on November 22, 2011 to the Lea County Detention Center ("LCDC"). *Id*. On March 5, 2012, Plaintiff filed a grievance in reference to the incident with Defendant Rivera, which was returned to him on March 21, 2012 as untimely. *Doc. 57*, Ex. C, *HT* at 60:5-63:24.

17. Subsequent to the alleged sexual assault through March 2012, Plaintiff filed no complaints or grievances with the New Mexico Department of Corrections other than those reflected in Exhibits C, H, and I.[2] *Doc. 57*, Ex. C; *Doc. 58*, Exs. H, I.

---

[2] On cross-examination, Plaintiff indicated that he filed some other informal complaint or grievance. *HT* at 80:13-82:6. Other than this unclear testimony, Plaintiff has presented no evidence of this other complaint. Moreover, Defendants' records, which this Court finds to have been diligently kept, show no entry from this supposed complaint. *Doc. 57*, Exs. D, E, F; *Doc. 58*, Exs. G, J. As such, on this claim that he filed another complaint, the Court finds his testimony not credible.

IV.    ANALYSIS

    A.    Overview

Pursuant to the PLRA, exhaustion of administrative remedies is a necessary prerequisite to a prisoner's 42 U.S.C. § 1983 lawsuit. *See Woodford v. Ngo*, 548 U.S. 81, 88 (2006). A remedy is not exhausted if the prisoner fails to follow prison procedures for pursuing administrative remedies. *See id*. at 95. In addition to following the procedural rules, the content of a prisoner's complaint/grievance must "provide[] prison officials with enough information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*, 461 F.3d 1269, 1282 (10th Cir. 2006), *overruled in part on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008). Failure of exhaustion is an affirmative defense which a defendant bears the burden of proving. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

The first question is whether Plaintiff exhausted his administrative remedies.[3] Based on the factual findings above, there is little question that Plaintiff has failed to exhaust. First, he filed no informal complaint within five calendar days of the incident. Second, the first informal complaint he filed after the incident did not put prison officials on notice that he was complaining about the alleged assault at LCCF. Instead, at best, the informal complaint was focused on getting information in preparation of

---

[3] It is unclear to the Court whether Plaintiff is arguing that he exhausted his administrative remedies or merely that he should be excused from his failure to do so. Thus, the Court will address this issue out of an abundance of caution.

making a complaint. Third, for none of Plaintiff's complaints did he complete each step of the process – informal complaint, formal grievance, appeal – that would qualify as exhaustion.

Therefore, the issue before the Court on Defendants' motion for summary judgment is whether Plaintiff is excused from the PLRA's exhaustion requirement. Plaintiff argues that he could not comply with the Department of Corrections' grievance procedure both because he feared retaliation by Defendant Rivera and because he was hindered in accessing those remedies by his own mental capacity, prison policy, and Defendants' conduct.

The PLRA requires that prisoners exhaust *available* remedies. See 42 U.S.C. § 1997e(a) (emphasis added). An administrative remedy is not "available" under the PLRA if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). "Based on this principle, we have obligated district courts to ensure that any defects in exhaustion are not procured from the action or inaction of prison officials." *Tuckel*, 660 F.3d at 1252 (quotation omitted). Threats or intimidation are one way prison officials can render administrative remedies unavailable. See *id.* at 1251. Under this theory, a prisoner must show both that the alleged threat of retaliation actually deterred him from pursuing administrative remedies and that this alleged threat would deter "a reasonable inmate of ordinary firmness and fortitude" from pursuing available

7

administrative remedies. *Id*. at 1254. Thus, in certain circumstances, an inmate who has "an objectively reasonable fear of retaliation from prison officials" may be excused from the exhaustion requirement of the PLRA. *Id*. at 1252.

### B. Plaintiff Is Not Excused from his Failure to Exhaust Administrative Remedies on the Basis of a Fear of Retaliation

Plaintiff testified that he failed to follow the proper grievance process based on his fear of retaliation by Defendant Rivera. *HT* at 77:24-78:5. The evidence does not support this excuse for failure to exhaust. By Plaintiff's own admission, he raised the incident with Dr. Lose, who responded to his complaint by arranging a meeting with senior prison officials, including the warden. *Id.* at 73:2-74:21. At this meeting, Plaintiff felt comfortable enough to describe the alleged assault. *Id*. Plaintiff's trust was rewarded as he was immediately moved into medical segregation where he would have no further contact with the alleged assaulter. *Id*. at 76:23-77:10, 91:19-92:9. Not only did the senior prison officials not threaten Plaintiff, but they affirmatively worked, through words and actions, to make him feel safe. *Id*. at 76:2-8, 76:23-77:10, 78:1-3, 91:19-92:9. In fact, the officials moved swiftly to transfer Plaintiff to a new correctional facility at the earliest possible opportunity, four days later. *Id*. at 76:22-77:19, 88:7-12.

Even if it is conceivable that Plaintiff's fear of Defendant Rivera would have provided an excuse for failure to timely file an informal complaint at LCCF, there are no facts to support the claim that once removed from LCCF, he still reasonably feared retaliation. As the court in *Tuckel* specifically noted, the excuse based upon fear of

retaliation is vitiated when the inmate is no longer held in the prison in which he experienced the threatening behavior. *Tuckel*, 660 F.3d at 1254. Plaintiff does not claim that he was threatened in any way once he was transferred to GCCF. To the contrary, Plaintiff filed two informal complaints without incident while at GCCF. *Doc. 58* Exs. F, H, I.

Under these circumstances, I find that "a reasonable inmate of ordinary firmness and fortitude" would not have been deterred from pursuing available administrative remedies. Thus, fear of retaliation does not excuse Plaintiff's failure to exhaust.

### C.     Plaintiff's Physical Disabilities Did Not Hinder his Access to the Grievance Process

Next, the Court considers Plaintiff's argument that his disabilities prevented him from accessing the grievance process.

Plaintiff contends that his diminished mental capacity was known to Defendants and Defendants' failure to accommodate his special needs obstructed his access to administrative remedies. *Doc. 35* at 7. He also argues that, because of his diminished mental capacity, that he should have been able to rely on the representations of the prison staff at LCCF to excuse his failure to pursue administrative remedies: "[t]he actions and statements made by prison staff left Plaintiff with no option but to believe that the alleged incident was being properly handled."[4] *Id.* at 10. Finally, Plaintiff also

---

[4] To the extent that Plaintiff is arguing that, because Defendants had notice of the assault due to his verbal report, exhaustion is accomplished or excused, such is contrary to precedent. *See Jernigan v. Stuchell*, 304

9

contends that his apparent mental disability prevented him from properly understanding the content of the New Mexico Department of Corrections Policy 150501. *Id.* at 2

Plaintiff does not present any other evidence, most notably in his hearing testimony, that he was mentally disabled at the time of the incident, much less that knowledge of this disability could in some way be imputed to Defendants. In fact, Plaintiff testified that he is a high school graduate. *HT* at 86:18. He also testified that he was both familiar with the grievance process and was capable of reading and completing his own informal complaint. *Id.* at 85:15-86:16. Plaintiff further stated that he did not have any difficulty filing his two recorded informal complaints at GCCF. *Id.* at 89:1-12. *Doc. 58*, Exs. H, I. I find that Plaintiff did not suffer from sufficiently diminished mental capacity that would excuse his failure to exhaust administrative remedies.

### D.     The Prison Policy on Grievances Was Sufficiently Clear

Plaintiff further claims that his access to administrative remedies was impeded by the lack of clarity in the New Mexico Department of Corrections' grievance policy. This statement is demonstrably untrue: the grievance procedure set forth in New Mexico Department of Corrections Policy CD-150501 explains precisely how to report sexual misconduct grievances. *Doc. 21*, Ex. D at 3. Prisoners are informed of this policy

---

F.3d 1030, 1032 (10th Cir. 2002) (doctrine of substantial compliance does not apply to PLRA exhaustion). At the hearing, Plaintiff, through counsel, conceded as much. *HT* at 94:9-18.

as a matter of course at the time they are incarcerated. *HT* at 27:14-28:2, 30:8-31:8. The Court finds that Plaintiff was advised about the grievance policy. Further, as discussed above, Plaintiff appeared to understand the grievance policy sufficiently well to attempt to comply with it at GCCF and LCDC.

I find that neither the alleged lack of clarity of the policies nor Plaintiff's alleged lack of understanding rendered the administrative remedies unavailable so as to excuse his failure to exhaust them..

### E. Defendants Did Not Impede Plaintiff's Access to Administrative Remedies

As described above, if "defects in exhaustion are procured from the action or inaction of prison officials," such defects are excused. *Tuckel*, 660 F.3d at 1252. In addition to Plaintiff's other claims, he asserts that his access to the grievance process was hampered by Defendants' failure to return his informal grievance form filed while at GCCF, thereby preventing Plaintiff from pursuing a formal grievance. *Doc. 35* at 8-9.

CD-150501 explains both that "non-resolved [informal] complaints shall be returned to the inmate to be attached to the formal grievance" and that "[t]he non-resolved Inmate Informal Complaint shall be attached to the formal grievance . . . ." *Doc. 21*, Ex. D at A(2)-(3). The policy also states that a copy of all resolved informal complaints will be "maintained," while all unresolved complaints are returned to the complaining inmate so that they can be attached to the formal grievance. *Id.* at A(2). Plaintiff asserts, both in his pleading and in a properly sworn affidavit, that he filed an

11

informal complaint about the incident with Defendant Rivera while at GCCF but that this complaint was never returned to him. *Doc. 35* at 8-9 & Ex. 4 ¶ 11. Without the complaint, he argues, he could not file a formal grievance since a formal grievance requires an attached complaint.

      This claim for excusal fails because the Court has found that Plaintiff did not file any informal complaint or formal grievance which properly raised the issue of the alleged assault until his March 2012 formal grievance. *See supra* pp. 5-6. To the extent that Plaintiff would point to the October 17, 2011 informal complaint, it fails to qualify for two reasons. First, it was filed nearly two weeks after the deadline imposed by the policy. Even if the Court were inclined to excuse a few days due to the alleged threat by Defendant Rivera and Plaintiff's transfer, the filing would fall well outside the time limits of the policy. Second, the October 17, 2011 informal complaint did not put the prison on notice that Plaintiff was complaining about the assault itself. It gave a time of incident well after the alleged assault and identified a prison official in a different facility from the one in which the assault allegedly occurred. *Doc. 58*, Ex. H. Moreover, the explanation indicated that Plaintiff was looking for information, not complaining about the assault. Therefore, even assuming this informal complaint was not returned

to Plaintiff, that error was not the cause of Plaintiff's failure to comply with the administrative remedy process.[5]

For all these reasons, Plaintiff's argument that the prison official's failure to return his informal complaint excused his failure to exhaust fails.

### F.     A Stay Will Not Be Granted to Permit Exhaustion

As the Tenth Circuit has explained, "[w]e have never held . . . that a district court must stay proceedings when presented with a prisoner's § 1983 . . . complaint containing only unexhausted claims. . . . Accordingly, the district court [is] under no obligation to stay proceedings and order exhaustion."  *Alloway v. Ward*, 188 F. App'x 663, 666 (10th Cir. 2006).  Because the evidence presented in this case shows that Plaintiff is well beyond the deadlines set forth by the New Mexico Department of Corrections Policy CD 150501, the Court finds that a stay would be futile and therefore inappropriate here.

## V.     CONCLUSION

Defendants have met their burden of establishing that Plaintiff failed to exhaust his administrative remedies regarding the alleged assault which forms the basis for his

---

[5] The Court also notes that, even assuming (1) Plaintiff had filed a timely informal complaint which had sufficiently raised the issue of the assault and (2) the prison had failed to return it to him to be attached to his formal grievance, Plaintiff would not have been prevented from filing a formal complaint.  The policy specifically states that the "[e]xpiration of a time limit at any stage without a decision will not be deemed a denial of the grievance and will entitle the grievant to move on to the next stage." *Doc. 57*, Ex. A at 7. Moreover, the testimony at the hearing confirmed that formal grievances without an attached informal complaint were accepted by the grievance officer if an informal complaint had indeed been filed.  *HT* at 38:24-39:12.

lawsuit. Moreover, they have met their burden of establishing that there is no basis to excuse his failure to exhaust. Therefore, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.[6]

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**

---

[6] "A dismissal based on lack of exhaustion … should ordinarily be without prejudice." *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)